UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL ROSS,

        Plaintiff,

v.                                                                                   Case Number: 05-71420

ROBERT D. IHRIE, individually, RICHARD         JUDGE PAUL D. BORMAN
SCARFONE, individually, IHRIE, SCARFONE      UNITED STATES DISTRICT COURT
& O/BRIEN, RICHARD R. SCARFONE, P.C.,
and DOES I through V, inclusive, and ROE
CORPORATIONS I through V, inclusive,

        Defendants.
_____/

**<u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT RICHARD R. SCARFONE AND DEFENDANT RICHARD R. SCARFONE, P.C.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 12)</u>**

      Now before the Court is Defendants Richard R. Scarfone and Richard R. Scarfone, P.C.'s Motion for Partial Summary Judgment on the Pleadings, or, in the alternative, Motion for Summary Judgment. The Court held a motion hearing on October 4, 2006. Having considered the entire record, and for the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendants Scarfone and Richard Scarfone, P.C.'s Motion for Summary Judgment.

**I.    PARTIES**

      Plaintiff Paul Ross ("Plaintiff"), an individual, is a resident of the State of Nevada. (Compl. ¶ 1). Defendant Robert D. Ihrie ("Attorney Ihrie"), an individual, is a resident of the State of Michigan. (Compl. ¶ 2). Defendant Richard R. Scarfone ("Attorney Scarfone") is an individual and believed to be resident of the State of Michigan. (Compl. ¶ 3). Defendant Ihrie,

1

Scarfone & O'Brien ("ISO") is alleged to be a partnership or other business entity formed under the laws of the State of Michigan. (Compl. ¶ 4). Defendant Richard R. Scarfone, P.C. ("Richard Scarfone PC") is a professional corporation formed under the laws of the State of Michigan. (Compl. ¶ 5).

## II.   FACTS

On September 27, 1999, Plaintiff attempted to board a Citizens Area Transit ("CAT") bus, owned by the Regional Transportation Commission ("RTC") – a government entity– near the crossroads of Flamingo Road and Boulder Highway in Las Vegas, Nevada. (Compl. ¶ 9; Pl.'s Resp. 2). The bus was operated by ATC/Vancom, Inc. (Compl. ¶ 9). Before boarding the bus, but after the bus had come to a stop, Plaintiff attempted to load his bike on a mounted storage rack. (Compl. ¶ 9). The storage rack was attached to the front of the bus. (*Id*.). Although the CAT bus driver had a clear view of "all activities taking place in front of the bus," the bus driver did not see Plaintiff and moved the bus forward. (Compl. ¶10, 11). As a result, the bus ran over Plaintiff and he suffered severe and disabling injuries. (Compl. ¶ 11). Plaintiff claims he incurred medical expenses of roughly $300,000.00. (Pl.'s Resp. 2).

In October of 1999, Plaintiff authorized his son, John Paul Ross ("John Ross"), to obtain legal representation on his behalf. (*Id*.). John Ross contacted Ihrie, an attorney in Grosse Pointe, Michigan, whom he had known for fifteen years. (Defs.' Br. 2). Attorney Ihrie worked at ISO, the alleged partnership which included professional corporations.[1] Attorney Ihrie indicated to Plaintiff that he was "familiar with Las Vegas and Nevada[,] and has handled many cases out

---

[1] As listed on its letterhead, Ihrie, Scarfone & O'Brien was made up of professional corporations Richard R. Scarfone, P.C., Robert D. Ihrie, P.C., and individuals Deborah F. O'Brien, Patrick F. Carron, Richard S. Albright, and Calvin C. Brown. (Defs.' Br. Ex. I).

2

there." (Defs.' Br. 2). On October 4, 1999, John Ross signed an Agreement for representation[2] (the "Agreement") on behalf of his father, based on the representations made by Ihrie. (Pl.'s Resp. 3; Pl.'s Resp. Ex. E). The Agreement was between Plaintiff and ISO, and it was signed by John Ross and Ihrie. (Pl.'s Resp. Ex. E). There is no provision in the agreement stating that Defendants' representation of Plaintiff was limited to Ihrie's professional services corporation. (*Id.*). Throughout Ihrie's representation of Plaintiff, there were no statements made to Plaintiff about the relationship between Attorney Scarfone and Attorney Ihrie; Plaintiff never relied on statements about a relationship between Attorney Ihrie and Attorney Scarfone. (Defs.' Br. 4; Defs.' Br. Ex. D, John Ross Dep. 43: 14-18).

In September of 2001, Attorney Ihrie informed John Ross that the relevant Nevada Statute, NRS 41.035, limited his recovery to $50,000.00. (*Id.*). Attorney Ihrie suggested that Plaintiff accept the settlement, stating that he conferred with other "lawyers, law firms." (Pl.'s Resp. 4-5; Defs.' Br. Ex. D, John Ross Dep. 28: 14-19). John Ross interpreted "other attorneys" to mean "other attorneys within his firm." (Defs.' Br. Ex. D, John Ross Dep. 31: 13-16). Attorney Scarfone had no involvement in any decision in Plaintiff's case. (Defs.' Br. Ex. A, Scarfone Aff. ¶ 10).

John Ross communicated Ihrie's recommendation to Plaintiff. (Pl.'s Resp. 5). Though Plaintiff was disappointed with a $50,000.00 settlement and felt his injuries exceeded the recommended settlement,[3] he accepted Ihrie's legal opinion. (*Id.*). Plaintiff signed the settlement agreement on September 20, 2001.

---

[2] Attorney Scarfone refers to this as a "Retainer Agreement." (Defs.' Br. 2).

[3] Earlier, Attorney Ihrie told Plaintiff that Plaintiff's case was worth seven million dollars. (Defs.' Br. Ex. B, Pl. Dep. 26: 18-20).

3

In 2004, Plaintiff became aware that Attorney Ihrie may have committed malpractice in his analysis of Nevada law and in his recommendation for settlement. (*Id*.). Plaintiff authorized the issuance of a demand to Defendants on March 12, 2004. (Pl.'s Resp. 5). Plaintiff originally filed this case in the Eighth Judicial District Court of the State of Nevada, in and for Clark County on July 20, 2004. (Clark County District Court Complaint, Docket No. 1). However, Attorney Scarfone was not served until November 8, 2004. On November 22, 2004, he removed the case to the United States District Court for the District of Nevada. The case was transferred to the Eastern District of Michigan on April 4, 2005. Plaintiff filed an Amended Complaint on May 4, 2005. Defendants Attorney Scarfone and Richard R. Scarfone, P.C. (collectively the "Scarfone Defendants") filed the instant Motion for Partial Judgment or Motion for Summary Judgment on March 29, 2006. Plaintiff responded on April 28, 2006. Defendants replied on May 4, 2006.

The Scarfone Defendants argue that summary judgment is proper because the Complaint was not filed within the statute of limitations and thus Plaintiff's cause of action is time barred. Defendants assert that summary judgment is also proper because Attorney Scarfone and Attorney Ihrie were not partners, nor are they partners by estoppel. Attorney Scarfone contends that summary judgment is proper as to him because he was an employee of Richard Scarfone, P.C. and, therefore, is entitled to the protection of his professional services corporation.

Plaintiff responds that summary judgment is inappropriate because Plaintiff's action against the Scarfone Defendants is not time barred. Plaintiff claims that he did not learn of the cause of action, nor was he aware of any negligent acts on the part of the Scarfone Defendants, until February 2004. Plaintiff asserts that alternatively, his claim was timely filed under the Nevada statute of limitations and the Nevada statute of limitations should apply in this case.

4

Plaintiff contends that a genuine issue of material fact exists as to whether Attorney Scarfone and Attorney Ihrie were partners. Alternatively, Plaintiff requests that the Court grant a continuance of the Court's summary judgment ruling until discovery is completed.

The Scarfone Defendants reply that Plaintiff only needs to discover that he has a possible cause of action for the statute of limitations to being to run. Defendants aver that Plaintiff knew he had a possible malpractice claim because he was dissatisfied with Ihrie's representation from "Day One," and believed that Attorney Ihrie did something wrong at the time Plaintiff signed the settlement agreement. Further, the Scarfone Defendants contend that even if the borrowing statute does not apply, Michigan's statute of limitation would still govern. The Scarfone Defendants argue that there is no evidence that Attorney Scarfone and Attorney Ihrie intended to form a partnership, as there was no partnership agreement; and they did not share profits or losses.

### III. ANALYSIS

#### A. Standard of Review

A complaint brought under Federal Rule of Civil Procedure 12(b)(6) should not be dismissed for failure to state a claim, "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Hoover v. Ronwin*, 456 U.S. 558, 587, 104 S. Ct. 1989; 80 L. Ed. 2d 590 (1984). For purposes of a motion to dismiss, the pleadings and affidavits are viewed "in a light most favorable to the Plaintiff." *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717 (E.D. Mich. 2003). All factual allegations and any inferences derived from those allegations must be accepted as true. *Cheriee Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "If, on a [motion to dismiss] . . . , matters outside the pleading are presented to and not excluded by the court, the

motion shall be treated as one for summary judgement and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to represent all material made pertinent to such a motion by Rule 56." FED. R. CIV. P 12(b).

A party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the non-moving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the non-moving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all

reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment.  *Celotex*, 477 U.S. at 322-23.  The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact.  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).  "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact."  *Id.* (citations omitted).  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).

"[T]he showing (whether as to standing or the merits) required to overcome a motion for summary judgment is more extensive than that required in the context of a motion to dismiss."  *Id.*  "The principal difference is that in the former context evidence is required, while in the latter setting the litigant may rest upon the allegations of his complaint."  *Id.* (citations omitted); *see* FED. R. CIV. P. 56(e) (requiring the "nonmoving party to go beyond the pleadings.").  Because Defendant relies upon evidence outside the pleadings, the Court treats Defendant's motion as a Motion for Summary Judgment.

    **B.**    **Discussion**

### 1. Statute of Limitations

The Scarfone Defendants argue that because Plaintiff's malpractice action was not filed within two years of Ihrie's last date of service, or within six months of discovery of the claim, the Complaint should be dismissed. The Scarfone Defendants contend that Plaintiff knew or should have known he had a cause of action, because he was upset with the amount of the settlement and dissatisfied with Ihrie's representation. Plaintiff argues that he did not "know" of the existence of a malpractice claim simply because he was "upset" with the outcome. Additionally, Plaintiff avers that even though he was disappointed with the settlement, he was not aware of negligent acts on the part of Ihrie.

The Court initially finds that Michigan law applies to the instant case because the case was transferred to this forum under 28 U.S.C. § 1406(a), as it was filed in the wrong district and transferred to a district, the Eastern District of Michigan, in which it could have been brought.

Mich. Comp. Law section 600.5805 requires a plaintiff to file a legal malpractice suit within two years of the attorney's last day of service. However, Mich Comp. Law section 600.5838 provides an exception to Mich. Comp. Law section 600.5805, and allows a plaintiff to file suit within six months of when the plaintiff discovered or should have discovered the claim, even if it is outside the two year requirement. *Terrace Land Dev. Corp v. Seeligson & Jordan*, 250 Mich. App. 452, 455 (2002).

> An objective standard [is] applied in determining when a plaintiff should have discovered a claim. Further, the plaintiff need not know for certain that he had a claim, or even know of a likely claim before the six-month period would begin. Rather, the discovery rule period begins to run when, on the basis of objective facts, the plaintiff should have known of a possible cause of action.

*Solowy v. Oakwood Hosp. Corp.*, 454 Mich. 214, 221-22 (1997). The "possible cause of action" standard requires that a plaintiff possess some minimum level of information. *Id*. at 226. The

8

totality of the information must suggest a nexus between the injury and the negligent act. *Id*. "The standard under the discovery rule is not that the plaintiff knows of a 'likely' cause of action. Instead, a plaintiff need only discover that he has a "possible" cause of action." *Gebhardt v. O'Rourke*, 444 Mich. 535, 544 (1994).

The elements of legal malpractice are: "(1) the existence of an attorney-client relationship, (2) the acts constituting the negligence, (3) that the negligence was the proximate cause of the injury, and (4) the fact and extent of the injury alleged." *Basic Food Indus., Inc. v. Grant*, 107 Mich. App. 685, 690 (1981); *Coleman v. Gurwin*, *443 Mich. 59*, 63 (1993). Harm is established by "the occurrence of identifiable and appreciable loss. Once an injury and its possible cause is known, the plaintiff is aware of a possible cause of action." *Gebhardt*, 444 Mich. at 545.

The Scarfone Defendants believe Plaintiff admitted that he knew he had a cause of action when he testified that from the day he settled, he thought Attorney Ihrie did something wrong.[4] However, a review of Plaintiff's complete deposition testimony reveals that Plaintiff was dissatisfied because Attorney Ihrie told him his case was worth $7,000,000.00, and he ended up with $50,000.00. Further, because he ended up with $50,000.00 instead of $7,000,000.00, Plaintiff believed at the time of settlement that Attorney Ihrie did something wrong. (*See* Defs.' Br. Ex. B, Paul Ross Dep. 45-48). As stated above, Plaintiff does not need to know the details of the evidence by which to establish the cause of action. Taking into account objective factors, Plaintiff did not know nor could have known, that a cause of action existed in his favor. Plaintiff

---

[4] Plaintiff's deposition testimony is as follows:
Q.  When did you find out or believe that Mr. Ihrie did something wrong?
A.  [Plaintiff:] We did that from day one as I talked to different people, all my kids.
    (Defs.' Br. Ex. B, Paul Ross Dep. 45:14-17).

9

merely believed that $50,000.00 was too low a settlement amount for the damages he suffered. Because he felt that he should have received more money, Plaintiff formed the opinion that Attorney Ihrie did something wrong. Plaintiff, however, did not know and could not have known that Attorney Ihrie misinterpreted the Nevada law.

In a light most favorable to the Plaintiff, the Court should find that there is a genuine issue of material fact as to whether Plaintiff knew or should have known that he had a cause of action before February of 2004. The issue remains whether Plaintiff knew that he had a cause of action or simply felt that Attorney Ihrie did something wrong because of the disappointing settlement.

Plaintiff had no legal training and accepted the fact that the Nevada legislature had limited the settlement amount. The statute of limitations for legal malpractice does not begin to run just because a client is unhappy with his attorney's work. As a result, it is a question of fact whether Plaintiff knew that he had a cause of action. Accordingly, the Court DENIES Defendants' Motion for Summary Judgment on their statute of limitations argument.

### 2.    Liability of Attorney Scarfone

Attorney Scarfone argues that if Plaintiff's claim is not barred by the statute of limitations, under the facts of the instant case, he is not liable in his individual capacity. Attorney Scarfone claims that the only possible partnership in existence was between Richard R. Scarfone, P.C. and Robert D. Ihrie, P.C. Thus, Attorney Scarfone believes that he is personally protected by his professional services corporation. Additionally, Attorney Scarfone argues that he did not commit any negligent or wrongful act, as he had no involvement with RTC or Plaintiff's settlement, and had no direct supervision or control over Ihrie. Plaintiff does not respond to this argument.

"It is well established that a corporation, including a professional corporation, is a legal person distinct and separate from its shareholders." *Dep't. of Consumer & Ind Svcs. v. Shah*, 236 Mich. App. 381, 393 (1999). Under Mich. Comp. Law section 450.226, a professional services corporation:

> shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, shareholders, agents or employees while they are engaged on behalf of the corporation in the rendering of professional services.

However, any "officer, shareholder, agent or employee" is only personally and individually liable for negligent or wrongful acts committed by him, for his misconduct, or for the misconduct of anyone under his direct supervision/control. M.C.L. § 450.226.

Attorney Scarfone is protected by his professional corporation to the extent that he did not perform any negligent or wrongful acts, or take part in any misconduct. Plaintiff has not alleged that Attorney Scarfone committed negligent or wrongful acts, nor that Attorney Scarfone engaged in any misconduct. Further, Plaintiff does not allege that Attorney Scarfone had direct supervision or control over Ihrie. Therefore, even in a light most favorable to the Plaintiff, the facts do not present a genuine material issue. Accordingly, the Court finds that Attorney Scarfone is not individually liable in the instant case, and Defendant's Motion for Summary Judgment as to Defendant Attorney Scarfone is GRANTED.

### 3.   Existence of a Partnership

The Scarfone Defendants argue that even if the action was timely filed, Attorney Scarfone and Attorney Ihrie were not partners under the law. The Scarfone Defendants aver that Attorney Ihrie and Attorney Scarfone never intended to form a partnership, they did not have an oral or written partnership agreement, did not share profits or losses, maintained separate clients

and cases, and purchased separate malpractice insurance policies. Plaintiff claims that Attorney Ihrie and Attorney Scarfone were partners, both individually and through their professional corporations, as exhibited by ISO letterhead which stated that the firm was a "Partnership including Professional Corporations." (*See* Defs.' Br. Ex. I, Ihrie Letter). Plaintiff asserts that the Agreement listed the law firm of ISO as Plaintiff's attorneys. Plaintiff also argues that if a partnership does not exist, there is substantial evidence to demonstrate that the elements of partnership by estoppel are met.

"A partnership is an association of two or more persons . . . to carry on as co-owners a business for profit." M.C.L. § 449.6. A "person," as indicated in Mich. Comp. Law section 449.6, includes "individuals, partnerships, *corporations*, and other associations." M.C.L. § 449.6 (emphasis added). The definition of partnership "is devoid of any requirement that the individuals have the subjective intent to create a partnership." *Byker v. Mannes*, 465 Mich. 637, 646 (2002). Each partner in a partnership is an agent of that partnership. M.C.L. § 449.9. The act of every partner, who carries on the usual business of the partnership, binds the partnership – unless the partner has no authority to act in the particular matter, and the person with whom the partner is dealing is aware that the partner lacks authority. *Id*. Partners are jointly and severally liable for everything chargeable to a partnership conducted within the ordinary course of business, and the partnership is liable to the same extent as the partner. M.C.L. §§ 449.13, 449.15. "Judicial interpretations of the Michigan Uniform Partnership Act, Mich. Comp. Laws § 449.1 *et seq*., regularly reference the common-law definition of a partnership," *Byker*, 465 Mich. at 648, which states that "in the absence of an express agreement . . . acts and conduct in relation to the business are the test to be used in determining if a partnership exists." *Van Stee v. Ransford*, 346 Mich. 116, 133 (1956).

> In determining whether a partnership exists, Michigan law sets forth the following rules for the establishment of a partnership:
> . . .
> (2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property;
> (3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived;
> (4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
>
>> (a)  As a debt by installments or otherwise,
>> (b)  As wages of an employee or rent to a landlord,
>> (c)  As an annuity to a widow or representative of a deceased partner,
>> (d)  As interest on a loan, though the amount of payment vary with the profits of the business,
>> (e)  As the consideration for the sale of the good-will of a business or other property by installments or otherwise.

M.C.L. § 449.7. "The determination of whether a partnership exists is a question of fact . . . ." *Miller v. City Bank & Trust Co.*, 82 Mich. App. 120, 123 (1978).

In the instant case, Plaintiff does not claim, nor is there evidence in the record of, an express partnership agreement. (*See also* Scarfone Aff. ¶ 7). There is no evidence that Attorney Ihrie and Attorney Scarfone, individually or through their professional corporations, made joint decisions concerning any of their work. While sharing of losses, like profit sharing, "constitutes evidence of partnership," *Grosberg v. Mich. Nat'l Bank Oakland*, 113 Mich. App. 610, 615 (1982), there is no evidence that Attorney Ihrie, Attorney Scarfone, or their professional corporations engaged in such conduct. (Defs.' Br. Ex. A, Scarfone Aff. ¶ 7). In fact, Attorney Scarfone claims that he did not receive any proceeds from Plaintiff's settlement. (*Id*.). Plaintiff does not contradict this assertion in his response. Attorney Scarfone and Attorney Ihrie maintained separate cases and clients, and purchased separate malpractice insurance policies.

13

(Defs.' Br. Ex. A, Scarfone Aff. ¶ 7). Plaintiff does not contradict this assertion. On the other hand, Plaintiff offers ISO's letterhead, Ihrie's business card and the fact that ISO's office telephone number was answered "Ihrie, Scarfone and O'Brien." (Pl.'s Resp. 15). While this may be evidence of partnership by estoppel, it does not show that ISO meets the definition of partnership. Viewing the facts in a light most favorable to Plaintiff, the record does not reveal evidence of a partnership within its definition. Accordingly, the Court GRANTS Defendants Motion for Summary Judgment as to whether a partnership existed.

### 4. Partnership by Estoppel

The Scarfone Defendants argue that Plaintiff was not told that Attorney Ihrie and Attorney Scarfone were partners, and Plaintiff did not rely on Attorney Scarfone or his position in determining to hire Ihrie. The Scarfone Defendants claim that Attorney Ihrie never indicated to Plaintiff or John Ross that Attorney Scarfone would be involved in the case. Plaintiff argues that the conduct of Attorney Ihrie and Attorney Scarfone, in addition to the letterhead, business card and the phone greeting by ISO's office personnel, demonstrates mutual consent in holding themselves out to the public. Plaintiff also points to the Agreement for representation, which lists ISO as the "attorney," and not Attorney Ihrie individually. Plaintiff contends that Paul and John Ross relied to their detriment on Attorney Ihrie and Attorney Scarfone's representations made though conduct and written materials.

There are two elements necessary to establish partnership by estoppel: (1) that the defendant represents himself to be a partner or consents to another's representation that he is a partner of one with whom he is not a partner; and (2) that the person to whom the false representation is made relies on that representation to his detriment. *Am. Casualty Co. v. Costello*, 174 Mich. App. 1, 9 (1989) (citing MCL 449.16).

14

The Court finds that a genuine issue of material fact exists as to whether Richard Scarfone PC, and Ihrie, through his professional corporation, represented themselves to be partners or consented to the other's representation that they were partners of someone who is not actually a partner. ISO's letterhead stated that it was a partnership, which included professional corporations. (Defs.' Br. Ex. I, ISO Letterhead). Additionally, Ihrie's personal business card, which lists ISO, represents that Robert D. Ihrie, P.C. and Richard R. Scarfone, P.C. worked together as partners. Moreover, ISO phones were not answered "Robert D. Ihrie, P.C.," or "Richard R. Scarfone, P.C.," but as "Ihrie, Scarfone and O'Brien." In a light most favorable to the Plaintiff, the above is evidence that Robert D. Ihrie, P.C. and Defendant Richard R. Scarfone P.C., represented themselves to be partners or consented to the other's representation that they were partners.

Further, the Agreement states "Ihrie, Scarfone & O'Brien hereinafter referred to as the 'Attorney'. . . . The client employs the Attorney to prosecute said action to final Judgment, or other settlement satisfactory to the Client. . . ." (Pl.'s Resp. Ex. E, Agreement for Representation). The Agreement further states that "Client [] agrees . . . to pay to the Attorney all of the reasonable and necessary out-of-pocket expenses." (*Id.*). In this instance, referring to both Attorney Ihrie and Attorney Scarfone together as "Attorney" for purposes of the Agreement is evidence that Robert D. Ihrie, P.C. and Defendant Richard R. Scarfone, P.C., represented themselves to be partners or consented to the other's representation that they were partners. Therefore, the Court finds that in a light most favorable to Plaintiff, the evidence meets the first element of partnership by estoppel.

The Court also finds that a genuine issue of material fact exists as to whether Plaintiff relied on Defendants representation to his detriment. John Ross acted as an agent for his father.

15

(Defs.' Br. Ex. D, John Ross Dep. 17: 14-23).  John Ross testified that Attorney Ihrie told him that ISO handles a number of cases out of state.  (*Id*., John Ross Dep. 13: 3-5).  Although John Ross did not inform Ihrie, he also testified that he was looking for a law firm to handle Plaintiff's case.  (*Id*., John Ross Dep. 20: 2-8).  Moreover, after reading the Agreement for representation, John Ross believed that Attorney Scarfone was also representing Plaintiff because "[t]he agreement indicated all three of the attorneys on the agreement."  (*Id*., John Ross Dep. 18: 9-16).

Additionally, the letterhead containing the names of Attorney Ihrie and Attorney Scarfone suggested to John Ross that Attorney Scarfone had input into decisions in the case. (*Id*., John Ross Dep. 22: 7-13).  Finally, when John Ross was told by Attorney Ihrie that he was going to consult with other attorneys, John Ross assumed that Attorney Ihrie meant other attorneys within his firm. Therefore, the Court finds that in a light most favorable to Plaintiff, the evidence provided meets the second element of partnership by estoppel.

Accordingly, the Court DENIES the Scarfone Defendants' Motion for Summary Judgment on the issue of partnership by estoppel as to Richard R. Scarfone, P.C. and Robert D. Ihrie, P.C.  Since there is no evidence to suggest that Attorney Ihrie and Attorney Scarfone met the first element of partnership by estoppel, the Court GRANTS the Scarfone Defendants' motion on the issue of partnership by estoppel as to Attorney Scarfone and Attorney Ihrie, individually.

## IV.    CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Defendants Attorney Scarfone and Richard Scarfone, P.C.'s Motion for Summary Judgment.  The Court GRANTS Defendants' Motion for Summary Judgment as to Attorney Scarfone's individual

liability and as to whether a partnership exists. The Court also GRANTS Defendant's Motion for Summary Judgment on the issue of partnership by estoppel as to Attorney Scarfone and Attorney Ihrie, individually. The Court DENIES Defendants' Motion for Summary Judgment as to whether Plaintiff's suit is time barred, and as to whether the elements of partnership by estoppel exist.

**SO ORDERED.**

                 s/Paul D. Borman
                 PAUL D. BORMAN
                 UNITED STATES DISTRICT JUDGE

Dated: November 28, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 28, 2006.

                 s/Denise Goodine
                 Case Manager